Charles C. Weller (SBN: 207034)
legal@cweller.com
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

Attorney for Plaintiff Sean Sullivan

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

SEAN SULLIVAN, *individually and on behalf of all those similarly situated*,

Plaintiff,

v.

BUILT BRANDS LLC, *a Utah limited liability company*,

Defendant.

No. _____

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

Sean Sullivan ("Plaintiff"), individually and on behalf of all other consumers similarly situated throughout the United States, by and through undersigned counsel, hereby brings this action against Built Brands LLC ("Built"), alleging that its Built Protein Bars and Puffs (collectively, "the Products"), which are manufactured, packaged, labeled, advertised, distributed, and sold by Defendant, are misbranded and deceptively labelled because they contain far fewer grams of protein per serving than stated upon their labels, and upon information and belief and investigation of counsel alleges as follows.

## PARTIES

1. Plaintiff Sean Sullivan is and at all times relevant was a citizen of the state of California, domiciled in San Francisco, California.

2. Defendant Built Brands LLC is a Utah limited liability company with its principal place of business and headquarters in American Fork, Utah. No members of the limited liability company reside in or are citizens of California.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code); specifically, under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

4. Plaintiff seeks to represent Class members who are citizens of states or countries different from the Defendant.

5. The matter in controversy in this case exceeds $5,000,000 in the aggregate, exclusive of interests and costs.

6. In addition, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

7. In the alternative, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). The amount in controversy excludes $75,000, exclusive of interest and costs.

8. This Court has personal jurisdiction over Defendant because this action arises out of and relates to Defendant's contacts with this forum.

9. Those contacts include but are not limited to sales of the Products directly to commercial and individual consumers located in this district, including Plaintiff; shipping the Products to commercial and individual consumers in this district, including Plaintiff; knowingly

directing advertising and marketing materials concerning the Products into this district through wires and mails, both directly and through electronic and print publications that are directed to commercial and individual consumers in this district; and operating an e-commerce web site that offers the Products for sale to commercial and individual consumers in this district, as well as offering the Products for sale through third-party e-commerce websites, through both of which commercial and individual consumers residing in this district have purchased the Products.

10. Defendant knowingly directs electronic activity and ships the Products into this district with the intent to engage in business interactions for profit, and it has in fact engaged in such interactions, including the sale of the Products to Plaintiff.

11. Defendant also sells the Products to retailers and wholesalers in this district for the purpose of making the Products available for purchase by individual consumers in this district.

12. Plaintiff's losses and those of other Class members were sustained in this district.

13. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.

14. Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because this Court maintains personal jurisdiction over Defendant.

**FACTUAL ALLEGATIONS**

15. Mr. Sullivan has made multiple purchases of the Products over several years from the Built website, including but not limited to:

   a. December 30, 2020 (White Chocolate Coconut, German Chocolate, and Banana Nut Bread bars);

   b. February 9, 2023 (Maple Donut puffs);

c.  March 17, 2023 (mixed 24-count box of bars and puffs);

d.  May 11, 2023 (White Chocolate Birthday Cake puff);

e.  May 28, 2023 (mixed box of puffs);

f.  June 11, 2023 (Cookies 'n Cream bar);

g.  June 20, 2023 (Cocoa Banana bar);

h.  April 22, 2024 (Chocolate Cookie Dough puff);

i.  May 9, 2024 (a build-your-own box of multiple flavors of bars and puffs); and

j.  May 28, 2024 (Maple Donut puff).

16.  The front label (or "principal display panel") of the Products states that they contain 15-19 grams of protein per serving, depending on the specific Product. The same claim is made on the Built website (https://built.com/collections/original-built-puffs and https://built.com/collections/original-built-bars).

17.  These claims regarding protein content are false. Testing conducted at the undersigned's direction on or about October 31, 2023 by an independent, third-party laboratory (EMSL Analytical, Inc.) employing the AOAC method reveals that the protein content in the Products is overstated, as set forth in these testing results:

| PRODUCT | STATED GRAMS PROTEIN | TESTED GRAMS PROTEIN | % SHORT |
|---|---|---|---|
| Built Bar - Brownie Batter | 17 | 15.7 | 8% |
| Built Bar - Cookies 'n Cream | 17 | 16.8 | 1% |
| Built Bar - Salted Caramel | 17 | 10 | 41% |
| Built Bar - Mint Brownie | 17 | 15.5 | 9% |
| Built Bar - Coconut | 17 | 15.5 | 9% |
| Built Bar – Raspberry | 17 | 11.8 | 31% |
| Built Bar – Churro | 17 | 13.4 | 21% |
| Built Bar - Peanut Butter | 17 | 8 | 53% |

18. To confirm this finding, the undersigned obtained additional bars manufactured and sold by Defendant, and on or about April 8, 2024 had them tested at a different national laboratory (Certified Laboratories, Inc.) using the AOAC method. The results were similar and confirm the Product testing set forth in the paragraph above:

| PRODUCT | STATED GRAMS PROTEIN | TESTED GRAMS PROTEIN | % SHORT |
|---|---|---|---|
| Built Puff - Coconut | 17 | 12.2 | 28% |
| Built Puff - Brownie Batter | 17 | 12.7 | 25% |
| Built Puff - Coconut Marshmallow (Sample #1) | 17 | 14.2 | 16% |
| Built Puff - Coconut Marshmallow (Sample #2) | 17 | 14.7 | 14% |
| Built Bar - Mint Brownie | 17 | 12.4 | 27% |
| Built Puff - Churro | 17 | 12.8 | 25% |
| Built Puff - Peanut Butter | 17 | 14.6 | 14% |
| Built Bar - Mint Chip | 17 | 14.4 | 15% |
| Built Bar - Coconut (Sample #1) | 17 | 12 | 29% |
| Built Bar - Coconut (Sample #2) | 17 | 13.7 | 19% |
| Built Bar - Raspberry | 17 | 10.4 | 39% |
| Built Bar - Brownie Batter | 17 | 15.6 | 8% |
| Built Bar - Double Chocolate | 17 | 14.6 | 14% |
| Built Bar - Salted Caramel | 17 | 15.4 | 9% |
| Built Bar - Cookies 'n Cream | 17 | 15.4 | 9% |

19. To further confirm this finding, the undersigned obtained and tested using the AOAC method certain Products that had previously purchased by Sullivan that he had not consumed. That testing was conducted on or about July 22, 2024. The results were:

| PRODUCT | STATED GRAMS PROTEIN | TESTED GRAMS PROTEIN | % SHORT |
|---|---|---|---|
| Built Puff – Brownie Batter | 17 | 10 | 41% |
| Built Puff – Maple Donut | 17 | 15.4 | 10% |

20. Because the Products are "Class I" foods as defined in 21 C.F.R. § 101.9(g)(3), no shortfall in protein content is permitted under federal labelling regulations. Instead, pursuant

to that provision, "the nutrient content … must be formulated to be at least equal to the value for that nutrient declared on the label."

21. Plaintiff reviewed the labels on the Products and the protein content claims made on the Built website prior to his purchase, and reviewed the protein content claim made on those labels and on the website. Consumers, including Plaintiff, who viewed the Products' labels and website reasonably understood this claim to mean that the Products contained the amount of protein stated on the label and on the website.

22. Plaintiff had no way of knowing based simply on the Products' appearance that they do not contain the amount of protein claimed and warranted by the label and on the Built website. Furthermore, consumers such as Plaintiff are under no obligation to investigate the nutrient content values stated on the Products' labels before making their purchase and are entitled to rely on those statements.

23. Because of its deceptive and false labelling statements, Defendant was enabled to charge consumers including Plaintiff a premium for the Products relative to key competitors' products, or relative to the average price charged in the marketplace.

24. Consumers, including Plaintiff, reasonably relied on Defendant's label and website claims described herein such that they would not have purchased the Products from Defendant if the truth about the Products was known, or would have only been willing to pay a substantially reduced price for the Products had he known that Defendant's representations were false and misleading.

25. Plaintiff suffered economic injury by Defendant's fraudulent and deceptive conduct as stated herein, and there is a causal nexus between Defendant's deceptive conduct and Plaintiff's injury.

26. All flavors of the Products are sold for similar prices, are packaged in similar packaging, are manufactured using the same base formulation, and all make the same misrepresentation regarding protein content on the label—*i.e.*, that they contain 15-19 grams of protein when they do not, as shown in this image used by Defendant in its marketing:



27. Given these similarities, Plaintiff has standing to represent the purchasers of all flavors of the Products, regardless whether he purchased each individual flavor of the Products.

**CLASS ACTION ALLEGATIONS**

28. Plaintiff brings this action individually and as representative of all those similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of all consumers in the state of California who purchased the Products within four years prior to the filing of this Complaint.

29. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

30. Plaintiff reserves the right to alter the Class definition, and to amend this Complaint to add Subclasses, as necessary to the full extent permitted by applicable law.

31. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

32. **Numerosity – Rule 23(a)(1)**: The size of the Class is so large that joinder of all Class members is impracticable. Plaintiff believes and avers there are thousands of Class members geographically dispersed throughout the state.

33. **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3)**: There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual Class members. Common legal and factual questions and issues include but are not limited to:

   a. Whether the marketing, advertising, packaging, and labeling for Defendant's Products is misleading and deceptive;

    b.   Whether a reasonable consumer would understand Defendant's label claims to indicate that the Products contained 15-19 grams of protein per serving, and reasonably relied upon those representations;

    c.   Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class members;

    d.   Whether Defendant breached an express warranty;

    e.   the proper amount of damages;

    f.   the proper scope of injunctive relief; and

    g.   the proper amount of attorneys' fees.

34. Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate this action. The common questions will yield common answers that will substantially advance the resolution of the case.

35. In short, these common questions of fact and law predominate over questions that affect only individual Class members.

36. **Typicality – Rule 23(a)(3)**: Plaintiff's claims are typical of the claims of the Class members because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

37. Specifically, all Class members, including Plaintiff, were harmed in the same way due to Defendant's uniform misconduct described herein; all Class members suffered similar economic injury due to Defendant's misrepresentations; and Plaintiff seeks the same relief as the Class members.

38. There are no defenses available to Defendant that are unique to the named Plaintiff.

39. **Adequacy of Representation – Rule 23(a)(4)**: Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant.

40. Furthermore, Plaintiff has selected competent counsel who are experienced in class action and other complex litigation. Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

41. **Superiority – Rule 23(b)(3)**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons:

   a. the damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct such that it would be virtually impossible for the Class members individually to redress the wrongs done to them. In fact, they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

   b. the class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single Court;

   c. the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

    d.   the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would be dispositive of the interests of other Class members or would substantively impair or impede their ability to protect their interests.

42. Unless the Class is certified, Defendant will retain monies received as a result of its unlawful and deceptive conduct alleged herein.

43. Unless a class-wide injunction is issued, Defendant will likely continue to advertise, market, promote, and sell its Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Class will continue to be misled, harmed, and denied their rights under the law. Plaintiff will be unable to rely on the Products' advertising or labeling in the future, and so will not purchase the Products although he would like to.

44. Furthermore, Plaintiff has not merely alleged an "informational" injury, but has also alleged that Defendant has been enabled to charge a price premium for the Products. Plaintiff has therefore alleged that accurately representing the protein content of the Products would cause a decrease in the price of the Products at which Plaintiff and members of the Class would be willing to buy the Products. As a result, Plaintiff has alleged more than simply an interest in Defendant telling the truth on its labels and in its website, but an economic injury that further supports prospective injunctive relief.

45. **Ascertainability**. To the extent ascertainability is required, the Class members are readily ascertainable from Defendant's records and/or its agents' records of retail and online sales, as well as through public notice.

46. Defendant has acted on grounds applicable to the Class as a whole, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

# COUNT 1
## VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CIVIL CODE § 1750 *et seq.*

47. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

48. Plaintiff is a "consumer" within the meaning of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

49. The sale of Defendant's Products to Plaintiff and Class members was a "transaction" within the meaning of the CLRA, Cal. Civ. Code § 1761(e).

50. The Products purchased by Plaintiff and Class members are "goods" within the meaning of the CLRA, Cal. Civ. Code § 1761(a).

51. As alleged herein, Defendant's business practices are a violation of the CLRA because Defendant deceptively failed to reveal facts that are material in light of the protein content representations that were made by Defendant on the labels of its Products.

52. Defendant's ongoing failure to provide material facts about its Products on its labels violates the following subsections of Cal. Civ. Code § 1770(a) in these respects:

   a. Defendant's acts and practices constitute misrepresentations that its Products have characteristics, benefits, or uses which they do not have;

   b. Defendant misrepresented that its Products are of a particular standard, quality, and/or grade, when they are of another;

   c. Defendant's acts and practices constitute the advertisement of goods, without the intent to sell them as advertised;

   d. Defendant's acts and practices fail to represent that transactions involving its Products involve actions that are prohibited by law, particularly the use of misleading nutritional labelling; and

    e.    Defendant's acts and practices constitute representations that its Products have been supplied in accordance with previous representations when they were not.

53. By reason of the foregoing, Plaintiff and the Class have been irreparably harmed, entitling them to injunctive relief, disgorgement, and restitution.

54. Pursuant to Cal. Civ. Code § 1782, Plaintiff notified Defendant in writing of the particular violations of the CLRA described herein and demanded Defendant rectify the actions described above by providing complete monetary relief, agreeing to be bound by their legal obligations, and to give notice to all affected customers of their intent to do so. Plaintiff sent this notice by certified mail to Defendant, at least 30 days before the filing of this Complaint.

55. Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiff and the Class are entitled to recover actual damages sustained as a result of Defendant's violations of the CLRA. Such damages include, without limitation, monetary losses and actual, punitive, and consequential damages, in an amount to be proven at trial.

56. Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiff is entitled to enjoin publication of misleading and deceptive nutritional labels on Defendant's Products and to recover reasonable attorneys' fees and costs.

### COUNT 2
### UNJUST ENRICHMENT

57. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

58. Defendant, through its marketing and labeling of the Products, misrepresented and deceived consumers regarding the protein content in the Products.

59. Defendant did so for the purpose of enriching itself and it in fact enriched itself by doing so.

60. Consumers conferred a benefit on Defendant by purchasing the Products, including an effective premium above their true value. Defendant appreciated, accepted, and retained the benefit to the detriment of consumers.

61. Defendant continues to possess monies paid by consumers to which Defendant is not entitled.

62. Under the circumstances it would be inequitable for Defendant to retain the benefit conferred upon it and Defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience.

63. Plaintiff seeks disgorgement of Defendant's ill-gotten gains and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

64. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

## COUNT 3
## BREACH OF EXPRESS WARRANTY

65. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

66. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Products had 15-19 grams of protein per serving (in most instances, 17 grams of protein per serving).

67. Defendant's express warranties, and its affirmations of fact and promises made to Plaintiff and the Class and regarding the Products, became part of the basis of the bargain between Defendant and Plaintiff and the Class, which creates an express warranty that the

Products would conform to those affirmations of fact, representations, promises, and descriptions.

68. The Products do not conform to the express warranty that the Products had 15-19 grams of protein per serving.

69. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' unnatural ingredients; (b) they paid a price premium based on Defendant's express warranties; and (c) the Products do not have the characteristics, uses, or benefits that were promised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief against Defendant:

a. Certifying the Class;

b. Declaring that Defendant violated the CLRA and/or was unjustly enriched and/or breached an express warranty;

c. Awarding actual and other damages as permitted by law;

d. Ordering an awarding of injunctive relief as permitted by law, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

e. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff;

f. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g. Such other relief as the Court may deem just and proper.

TRIAL BY JURY IS DEMANDED ON ANY COUNTS SO TRIABLE.

Respectfully submitted,

/s/ *Charles C. Weller*
Charles C. Weller (Cal. SBN: 207034)
Attorney for Plaintiff

July 29, 2024